UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD W. DEMARTHRA, Jr., | No. 2:16-cv-00790 TLN AC P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| Respondent. | |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed on April 18, 2016. ECF No. 1. Petitioner raised three grounds for relief in that petition. Id. On May 30, 2017, the district judge adopted this court's recommendation that petitioner's sufficiency of the evidence claim be dismissed for failure to exhaust. ECF No. 18. The two remaining claims are that: (1) petitioner's constitutional confrontation rights were violated when the prosecution failed to exercise due diligence in locating unavailable witness Stefan Bennett, who had previously testified at a preliminary examination; and (2) that petitioner was denied the opportunity to cross examine Bennett at the preliminary examination in which he did testify. Respondent filed an answer to these claims (ECF No. 19) and petitioner has not filed a traverse within the allotted time.

1

# BACKGROUND

I. Proceedings In the Trial Court[1]

    A. Prosecution Case

On September 14, 2012, Stefan Bennett and his cousin, Neshanda Culpepper, were walking home from a store. They soon saw petitioner walking towards them. Petitioner confronted Bennett and angry words were exchanged. Petitioner then drew a handgun and fired a single shot. Bennett would later testify at a preliminary hearing that he felt pain in his foot and ran from the area.[2] Culpepper testified that, shortly before the shooting occurred, she ran to a nearby house and hid in the garage. She did not see the gun being drawn, but heard what sounded like a gunshot.

Police arrived at the scene and interviewed Bennett, Culpepper, and Ravneel Dutt – who witnessed the events from the garage of a nearby home (the same garage into which Culpepper fled). At trial Dutt testified that petitioner had approached Bennett in an "alpha way." He also testified that petitioner had pulled something out of his pocket as he neared Bennett. Previously, Dutt told police that he had actually seen petitioner pull out a firearm, but at trial he clarified that he had closed his garage door before confirming exactly what petitioner had pulled from his pocket. As the garage door closed, Dutt testified that he heard something like a gunshot. Police recovered a spent .22 caliber shell casing at the scene. Petitioner was not apprehended that day.

The underlying dispute between Bennett and petitioner was the subject of differing testimony at trial. Culpepper testified that she knew petitioner's sister, Veronica. Culpepper stated that a "misunderstanding" had developed between Bennett and Veronica over payment for a cell-phone charger (or similar device). At the preliminary hearing, Bennett testified to his belief that Veronica owed Culpepper money for the charger. By contrast, petitioner testified that the dispute concerned money Veronica owed Bennett for Vicodin pills.

Two days after the shooting, police in San Jose, California responded to a service call in

---

[1] This summary is based on the court's independent review of the trial record.
[2] Bennett's preliminary hearing testimony was admitted at trial over defense objection, on grounds of witness unavailability. The record of pretrial motions on this issue is summarized below, in the context of petitioner's claims for relief.

the early hours of the morning. The officers saw a silver hatchback parked on the sidewalk of Albany Drive. They found petitioner and his girlfriend asleep inside. The officers questioned petitioner about ownership of the car and he told them it belonged to someone named Derrick. The officers arrested petitioner for having a stolen vehicle. Their search of the car uncovered a loaded .22 caliber handgun. Police seized the handgun and petitioner was released from custody shortly thereafter.

Petitioner returned to Sacramento several times in subsequent months and, on December 10, 2012, Sacramento police encountered him at his sister's house. They arrested him for the September shooting. Petitioner denied knowing Bennett or Culpepper or having any involvement in the shooting. After the arrest Sacramento police learned that the San Jose police department had petitioner's handgun. The firearm was transferred to Sacramento and underwent ballistics testing. It was determined that the spent shell casing from the shooting scene matched the handgun.

B. Defense Case

At trial, petitioner admitted shooting at Bennett, but testified that his actions were taken in self-defense. He stated that Bennett was a drug dealer and that Veronica owed Bennett twelve dollars for Vicodin. Petitioner testified that Bennett had harassed Veronica about this debt. Petitioner admitted arming himself with a gun and confronting Bennett about the harassment on the day of the shooting. He testified that, during the confrontation, Bennett went for a "chrome" object tucked into his waistband. Petitioner then drew his handgun and fired at the ground in order to scare Bennett.

C. Outcome

On March 21, 2013, the jury found petitioner guilty of: (1) assault with a firearm pursuant to Cal. Penal Code § 245(a)(2); and (2) being a felon in possession of a firearm pursuant to Cal. Penal Code § 29800(a)(1). CT at 165.[3] The jury also found true an enhancement to the first count for personally using a firearm pursuant to Cal. Penal Code § 12022.5(a)-(d). Id. Petitioner

---
[3] "CT" refers to the Clerk's Transcript on Appeal.

3

was sentenced to seven years in state prison – three years on count one and four years for the firearm enhancement. CT at 207-208. The sentence on the second count was stayed. Id.

II. Post-Conviction Proceedings

Petitioner filed a timely notice of appeal on June 17, 2013. Id. at 209. On appeal, petitioner argued that: (1) the trial court erred in determining that Bennett was unavailable and admitting his preliminary hearing testimony at trial; and (2) the assault conviction was not supported by sufficient evidence. Lodg. Doc. 7. The court of appeals affirmed petitioner's conviction on November 24, 2014. Id.

On December on January 7, 2015, petitioner filed a petition for review to the California Supreme Court which raised only his claim that the trial court erred in finding Bennett unavailable and admitting his preliminary hearing testimony. Lodg. Doc. 8. This petition received a silent denial on February 11, 2015. Lodg. Doc. 9.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc).

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. Id. An unreasonable determination of facts may exist where the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not

made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. See Taylor v. Maddox, 366 F.3d 992, 999 1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. See, e.g., Wiggins, 539 U.S. at 528; Green v. LaMarque, 532 F.3d 1028 (9th Cir. 2008).

## DISCUSSION

### I. Petitioner's Allegations And Pertinent State Court Record

Petitioner contends that his confrontation rights were violated by admission at trial of Stefan Bennett's preliminary hearing testimony. Petitioner argues that the prosecution failed to undertake a good faith effort to make Bennett available at trial. He also contends, in a separate but related claim, that he was denied the opportunity to effectively cross-examine Bennett during the preliminary hearing.

The record reflects the following facts and procedural history:

A preliminary hearing was held on January 2, 2013. CT 11. Stefan Bennett testified, id. at 15-35, and was cross-examined by defense counsel, id. at 35-53.

On March 12, 2013, the prosecution moved in limine to have Bennett's preliminary hearing testimony admitted at trial due to his unavailability. CT 64, 68. The prosecutor explained that efforts to contact Bennett since the preliminary hearing had been unsuccessful. The efforts were detailed as follows:

> (1) numerous phone calls to his last known phone number went unreturned;
>
> (2) a process server was unsuccessful in serving a subpoena at Bennett's address listed in the crime report;
>
> (3) service was reattempted at that address less than a month later, again unsuccessfully;
>
> (4) an investigation by the Department of Human Assistance indicated that Bennett might be residing at an apartment in Carmichael;
>
> (5) personal service at the Carmichael address was unsuccessful;
>
> (6) discussions with Nashada Culpepper were unavailing as she indicated she did not know where Bennett was currently residing;

6

(7) further investigation revealed that Bennett might be residing at a different Sacramento address from the one listed on the crime report;

(8) personal service at the new address was, again, unsuccessful;

(9) investigators received an updated phone number for Bennett from Culpepper shortly before trial;

(10) messages left at that number were not immediately returned.

CT 68-73. At a hearing on the motion in limine, the trial court expressed some concern about two leads that were not followed, specifically Bennett's current place of employment and his status as a military reservist. RT at 92.[4]

On March 14, 2013, at a continued diligence hearing, the prosecutor informed the court that she had finally managed to contact Bennett by phone. Id. at 97. Bennett stated that he was now working in Reno, Nevada for AT&T and was unwilling to provide a current address. Id. Despite offers from the prosecutor to provide him with transportation, he expressed reluctance to take time to testify in court and cited the fact that he had started his new job, was in training, and was experiencing financial difficulties. Id. The prosecutor asked him to check with his work and he promised to call back. Id. The prosecutor noted that Bennett was still technically unavailable as he was not yet under subpoena. Id. The state's investigator also testified that he had followed up on the employment and military leads, per the court's request. Id. at 100-101. The investigator stated that these leads had not proven useful, but he was still waiting to hear from postal inspections as to whether a forwarding address for Bennett could be obtained. Id. at 101. The trial court then concluded:

> Based on the analysis and findings of facts the court put on the record yesterday and in addition to this witness' testimony today, the Court finds that the People have shown reasonable due diligence to allow the admission of the prior testimony. So the People's motion is granted. But I understand that you may still find [Bennett], hopefully, and he'll be here.

Id. at 102. Bennett ultimately did not appear at trial and his preliminary hearing testimony was read to the jury. RT at 121-122.

---

[4] "RT" refers to the Reporter's Transcript on Appeal.

7

## II. The Clearly Established Federal Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause generally bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004). With respect to unavailability, "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 724-25 (1968). In Ohio v. Roberts the Supreme Court held:

> The law does not require a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation. The lengths to which the prosecution must go to produce a witness is a question of reasonableness.

448 U.S. 56, 74 (1980), abrogated on other grounds by Crawford, 541 U.S. at 60-69.

The Supreme Court has held that "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (internal quotation marks and citations omitted). This guarantee, however, demands only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original).

## III. The State Court's Ruling

The claim of error in finding Bennett unavailable to testify was raised on direct appeal. Lodg. Docs. 4, 8. Because the California Supreme Court denied discretionary review, Lodg. Doc. 9, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The state appellate court ruled as follows:

> Defendant contends the admission of Bennett's preliminary examination testimony at trial in lieu of live testimony violated his confrontation and cross-examination rights under the Sixth and Fourteenth Amendments to the federal Constitution and article I, section 15, of the California Constitution. Specifically, defendant claims the prosecution failed to use due diligence in securing Bennett's attendance at trial, and defendant had no opportunity for effective cross-examination at the preliminary examination. Defendant argues the error was prejudicial and requires reversal. We disagree.
>
> In a pretrial motion, the prosecution sought a ruling that Bennett's preliminary examination testimony could be admitted at trial, because Bennett was not available as a witness. (Evid.Code, §§ 240, 1290, 1291.) Defendant opposed the motion on the ground the prosecution had not shown unavailability.
>
> On March 13, 2013, the trial court held a due diligence hearing. Barbara Barry, a process server for the Sacramento District Attorney's Office, and David Kidd, a criminal investigator for that office, testified about their efforts to locate and serve Bennett. Barry testified that she was assigned to the case on February 7, 2013. She entered Bennett's name in the office's computer system and obtained an address on Hamburg Way. She visited the address but nobody answered the door. She left her business card at the door.
>
> On February 14, 2013, Barry inquired of the Sacramento Municipal Utility District (SMUD) as to the most recent address where Bennett was receiving service.
>
> On February 19, 2013, Barry inquired whether Bennett was in custody. Bennett was not in custody, but Barry learned that he had a misdemeanor warrant, which allowed her to conduct a welfare inquiry with the Sacramento County Department of Human Assistance (DHA).
>
> On February 25, 2013, while awaiting responses from the two inquiries, Barry returned to the Hamburg Way address and again left her business card.
>
> On February 26, 2013, Barry received a response to her welfare inquiry. She learned that Bennett had an electronic benefits transfer (EBT) card that recently had been used in the north area of Sacramento. Based on this information, Barry entered Bennett's information into an online information system and found an address on Walnut Avenue in Carmichael. Tony To, a process server who works in the north area, attempted service at the Walnut Avenue address. The manager for the Walnut Avenue address informed To that an elderly lady and her daughter lived there, not Bennett.
>
> On February 27, 2013, Barry received a response from SMUD indicating that Bennett last received utilities at an address on

| | |
|---|---|
| 1 | Hackberry Lane in Sacramento. However, the utilities for Hackberry Lane had been canceled in May 2012. SMUD also provided a telephone number for Bennett. Barry called the number and the voice mail said she had reached Stefan Bennett. Barry left messages for Bennett but received no response. |

Barry spoke to Culpepper regarding Bennett's whereabouts. She confirmed that Bennett no longer lived with her at the Hamburg address. She had no contact information for him. Culpepper agreed to meet Barry at the Hamburg address but no one answered the door when Barry arrived. Between February 7 and February 28, 2013, Barry was unable to contact Bennett.

On cross-examination, Barry said she had not been advised of Bennett's employment with the firm he had named at the preliminary examination. Nor had she been advised of any involvement with the military reserves.

On March 4, 2013, criminal investigator David Kidd was assigned to continue the search. After running Bennett's name through several databases, Kidd returned to the Hamburg address and received no response to his knock. Kidd attempted to speak with surrounding neighbors but they did not open their doors. Kidd then drove to the Hackberry address in the north area of Sacramento and discovered that the apartment was vacant.

Kidd contacted investigators at DHA and learned that Bennett had been using his EBT card in the north area of Sacramento and, on the night of March 3, 2013, in Southern California.

On March 5, 2013, Kidd contacted Culpepper who indicated she had received cards from the district attorney's office and had passed the information to Bennett. Culpepper also gave Kidd a more recent telephone number for Bennett. Kidd called the number and heard an announcement in which Bennett stated his name. Kidd left a message but received no response.

On March 7, 2013, Kidd again contacted DHA and learned that Bennett's EBT card had been used at stores in northern Sacramento County. Kidd searched for Bennett at the stores without success. At the hearing, he described that effort as looking for "a needle in a haystack."

Following the testimony, defense counsel argued the search efforts were insufficient because there was no investigation of Bennett's employment and military service and his ties to other states.

The trial court stated: "So just so the record is clear, it appears to me that your objection to the People's motion to use the former testimony is solely based on that they did not show due diligence. You are not asserting that you didn't have an opportunity to effectively cross-examine the witness, or the witness testified under oath, or that essentially defendant has substantially similar motive now, cross-examining the witness that you did at the preliminary hearing, your objection is based on the lack of due diligence; is that

10

correct?" Defendant's counsel answered, "That's correct, Judge and—that's correct."

In considering the motion, the trial court stated: "And it appears from their testimony, largely, they made reasonable diligence, making untiring efforts and good earnest effort, including even chasing, as the investigator said, a needle in a haystack, by going to the area where there was [a use of the EBT card]." But the court was concerned that there was no exploration of Bennett's claimed employment and military service. The hearing was continued for exploration of those issues.

At the continued due diligence hearing on March 14, 2013, Kidd testified that he had spoken to a supervisor at Nationwide Debt Management Solutions who was familiar with Bennett. Bennett had stopped coming to work the Monday after Christmas 2012 and evidently was attempting to move out of state. Kidd requested that the company provide him with any forwarding information and he was waiting for a response.

The United States Army advised Kidd that Bennett had been discharged from the reserves in 2000 and his last known address was in the Indianapolis area.

Kidd submitted a formal request to the United States Postal Service for forwarding information for Bennett and was awaiting a response.

The prosecutor advised the trial court that she had telephoned Bennett's number several times that morning. After repeatedly failing to answer, Bennett finally did so and told the prosecutor that he lived in Reno. Bennett refused to provide an address. He stated that he had started a new job with AT & T, was having trouble with transportation, and was experiencing financial difficulties.

The trial court ruled: "Based on the analysis and findings of facts the court put on the record yesterday and in addition to this witness' testimony today, the Court finds that the People have shown reasonable due diligence to allow the admission of the prior testimony. So the People's motion is granted. But I understand you may still find him, hopefully, and he'll be here."

Bennett's former testimony was read to the jury without further objection.

" 'The constitutional right to confront witnesses mandates that, before a witness can be found unavailable, the prosecution must "have made a good-faith effort to obtain his presence at trial." ' [Citation.] California law and federal constitutional requirements are the same in this regard. [Citation.]" (*People v. Valencia* (2008) 43 Cal.4th 268, 291–292; see *People v. Herrera* (2010) 49 Cal.4th 613, 620–621.) "California allows introduction of the witness's prior recorded testimony if the prosecution has used 'reasonable diligence' (often referred to as due diligence) in its unsuccessful

11

efforts to locate the missing witness." (*People v. Cromer* (2001) 24 Cal.4th 889, 892.)

Due diligence depends upon the facts of the individual case. The term is incapable of mechanical definition. The court must consider the totality of efforts of the proponent to achieve the presence of the witness. (*People v. Sanders* (1995) 11 Cal.4th 475, 523.) Relevant considerations include whether the search was timely begun, the importance of the witness's testimony, and whether leads were competently explored. (*People v. Cromer*, *supra*, 24 Cal.4th at p. 904.)

Due diligence may require the prosecution to use the Uniform Act to Secure Attendance of Witnesses from Without the State (Uniform Act) to procure a witness's attendance at trial. The Uniform Act has been adopted by California (§ 1334 et seq.) and Nevada (Nev. Rev. Stats., § 174.395 et seq.).

The good faith obligation to use the Uniform Act arises only when the prosecution knows the location of the witness. "If the witness cannot be located, application of the Uniform Act is impossible. In cases in which the witness disappears, the prosecution only has a good faith obligation to find the witness." (*Dres v. Campoy* (9th Cir.1986) 784 F.2d 996, 999; *Ohio v. Roberts* (1980) 448 U.S. 56, 75–77 [65 L.Ed.2d 597, 613–615], overruled on other grounds in *Crawford v. Washington* (2004) 541 U.S. 36, 68–69 [158 L.Ed.2d 177, 203].)

In the trial court, the proponent has the burden of proving by competent evidence that the witness is unavailable. (*People v. Stritzinger* (1983) 34 Cal.3d 505, 516.) The standard of proof is preponderance of evidence. (*People v. Williams* (1979) 93 Cal.App.3d 40, 51, overruled on other grounds in *Coito v. Superior Court* (2012) 54 Cal.4th 480, 499.)

On appeal, "the judgment of the trial court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent and error must be affirmatively shown." (*People v. Malabag* (1997) 51 Cal.App.4th 1419, 1422 (Malabag ).) The trial court's due diligence determination is subject to independent review. (*People v. Cromer*, *supra*, 24 Cal.4th at pp. 893–894.)

As noted, defense counsel expressly limited his objection to the issue of due diligence and eschewed any objection related to motive or opportunity for prior cross-examination. His express waiver at trial forfeits his appellate contention that he had no opportunity for effective cross-examination at the preliminary examination.

The People read trial counsel's remarks more broadly, as a waiver and consequent forfeiture of the entirety of defendant's "confrontation clause claim." But the issue of good faith or reasonable diligence arises under the confrontation clause as well as under California law. As to that issue, there is no forfeiture.

Defendant contends the prosecution's showing of due diligence was inadequate because the first month of searching was conducted by Barry, the process server, rather than by Kidd, the investigator. The point is asserted without argument or citation of authority and requires no further discussion. (*People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4.)

Defendant next claims the prosecution had a current active telephone number for Bennett as early as February 27, 2013, but "did not undertake a persistent effort to contact Bennett telephonically until the prosecutor herself called repeatedly on March 14th, at which point she met with success." The record does not support this claim.

Berry testified that she called Bennett's telephone and left an unspecified number of messages for him. Kidd testified that Culpepper gave him a more recent telephone number for Bennett which he called and heard an announcement in which Bennett stated his name. Kidd left a message but received no response.

There was no evidence that Bennett answered the prosecutor's calls because she had placed so many of them or, conversely, that Bennett had ignored the calls of Barry and Kidd because there had been so few of them. Defendant has not "affirmatively shown" that Barry and Kidd had been insufficiently diligent. (*People v. Malabag, supra*, 51 Cal.App.4th at p. 1422.)

Defendant complains that Kidd did not use a "reverse directory" available on the Internet to obtain a physical address for Bennett's telephone number. Kidd testified that he did not do so because the inquiry would cost money. But the evidence did not establish whether defendant's service provider, Metro PCS, reveals subscriber information for a fee on the Internet. Whether a fee-based inquiry would have yielded useful information on Bennett is speculative on this record.

Defendant also complains that Kidd failed to request subscriber information directly from Metro PCS. But the record does not establish whether Metro PCS, like SMUD and unlike PG & E, would have been willing to work with investigators. Whether Kidd could have obtained Bennett's address from Metro PCS is speculative. No error is affirmatively shown. (*People v. Malabag, supra*, 51 Cal.App.4th at p. 1422.)

Defendant next contends that, regardless of the prosecution's efforts prior to March 14, 2013, the fact the prosecutor spoke with Bennett that day by telephone and established his employer's name and city of residence "rendered the prior showing of 'due diligence' moot." Defendant has forfeited this contention because his trial counsel never renewed his objection or addressed the due diligence issue in the new factual context set forth in the prosecutor's remarks.

"Evidence Code section 353, subdivision (a) requires that an objection to evidence be 'timely made and so stated as to make clear the specific ground of the objection or motion....' As we have

13

> explained: ' "Specificity is required both to enable the court to make an informed ruling on the ... objection and to enable the party proffering the evidence to cure the defect in the evidence." ' " (*People v. Mills* (2010) 48 Cal.4th 158, 207.) Here, trial counsel never asked the court to address the practicalities of sending an investigator to Reno or the adequacy of the prosecutor's oral efforts to persuade Bennett to appear at trial.
>
> In any event, the record shows that Bennett withheld his home address from the prosecutor and in all likelihood would have withheld his work address as well. Nothing in the record suggests that AT & T would have emulated SMUD, rather than PG & E, in its willingness to reveal employee or subscriber information. Whether investigators could have staked out every AT & T facility in the Reno area in order to search for Bennett was not explored at trial. On this record it is not reasonably probable that, but for counsel's failure to object, a determination more favorable to defendant would have resulted. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)
>
> Defendant argues that, "once the prosecutor knew where Bennett was," she was obligated to use the procedures of the Uniform Act. But the obligation to use the Uniform Act arises only when the prosecution knows the location of the witness. (*Dres v. Campoy*, *supra*, 784 F.2d at p. 999; *Ohio v. Roberts*, *supra*, 448 U.S. at pp. 75–77 [65 L.Ed.2d at pp. 613–615].) Contrary to defendant's argument, Bennett was "hiding" in that he did not reveal his home address and there was no suggestion he would disclose his work address. The prosecution was not required to do everything possible to obtain Bennett's timely attendance; it was required only to use reasonable diligence. (*People v. Lopez* (1998) 64 Cal.App.4th 1122, 1128.) No error is shown.

Lodg. Doc. 7 at 4-12.

### IV. Objective Reasonableness Under § 2254(d)

#### A. Due Diligence

The state court of appeal's determination that the prosecution exercised reasonable diligence was not an unreasonable determination of the facts. The record amply supports the finding that the prosecution's investigators undertook significant efforts to find Bennett and make him available. These efforts included: (1) attempting personal service of a subpoena at Bennett's last known address (RT at 32, 36); (2) attempting to trace Bennett's current address via social security number; (id. at 34); (3) submitting a welfare inquiry to the Department of Human Assistance which asked for Bennett's current information (id. at 35); (4) tracing use of Bennett's EBT (electronic benefits transaction) card (id. at 36); (5) attempting personal service of a

14

subpoena at a potential address uncovered during the investigation (id. at 37); (6) speaking to neighbors near Bennett's last known address (id. at 61); and (7) speaking to Bennett's cousin – Natasha Culpepper – and procuring a more current phone number for the witness (id. at 66). The trial court expressed concern that investigators had not inquired about Bennett's last known place of employment and whether any information could be obtained based on his status as an army reservist. Id. at 92. Before a continued diligence hearing, the prosecution's investigators followed up on these leads. Id. at 100-101. Finally, once Bennett was contacted by phone, the prosecution made reasonable attempts to procure his presence by offering to take care of his transportation and asking him to confer with his new employer about possibly taking time to testify. Id. at 97. The question of whether reasonable or good faith diligence was undertaken is fact dependent, Roberts, 448 U.S. at 74, and this court cannot say that the court of appeal's determination of the relevant facts was unreasonable.

Nor did the court of appeal unreasonably apply federal law. Petitioner claims that the prosecution's efforts did not amount to reasonable diligence insofar as no steps were taken to secure Bennett's presence by means of the Uniform Act (referring to the Uniform Act to Secure Attendance of Witnesses from Without the State). ECF No. 1 at 3. But as the court of appeal pointed out, Bennett's exact location was never known. The prosecution learned he was in Reno when Bennett finally answered his phone, but Bennett declined to provide the prosecutor with his address. 1 RT at 97. The obligation to employ the Uniform Act "arises only when the prosecutor knows the location of the witness." Dres v. Campoy, 784 F.2d 996, 999 (9th Cir. 1986); Roberts, 448 U.S. at 75-77.

The Constitution requires only location efforts that are reasonable under the circumstances, Roberts, 448 at 74, and it was not objectively unreasonable of the state appellate court to conclude that this standard was satisfied. Because Bennett was reasonably determined to be unavailable, and had been subject to cross-examination at the preliminary hearing, the denial of petitioner's claim was a reasonable application of Crawford and the Supreme Court's well-established Confrontation Clause jurisprudence. See Crawford, 541 U.S. at 53-54 (Confrontation Clause bars admission of testimonial witness statements *unless* witness is unavailable and

defendant had a prior opportunity for cross-examine).

For these reasons, this claim should be denied.

### B. Opportunity to Cross-Examine at Preliminary Hearing

As respondent correctly notes, petitioner did not present this claim in his petition for review to the California Supreme Court. See Lodg. Doc. 3 (raising only the claim that trial court erred in finding Bennett unavailable). The claim is therefore unexhausted. See Baldwin v. Reese, 541 U.S. 27, 29 (2004) (exhaustion requirement requires presentation of claim to highest state court). This court has identified two other grounds for disposing of the claim, however, and elects to rely on these as grounds for decision. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

First, this claim is procedurally defaulted. The Supreme Court has held that federal habeas review is precluded where a petitioner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This rule is excepted if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation, or that failure to consider the defaulted claim will result in a fundamental miscarriage of justice.[5] Id. Here, the state court of appeal clearly and expressly relied on a procedural bar – the contemporaneous objection rule – to dispose of this claim when it noted that "defense counsel expressly limited his objection to the issue of due diligence and eschewed any objection related to motive or opportunity for prior cross-

---

[5] The Supreme Court has since directed courts to read Coleman as containing another exception which allows a federal court to find cause to excuse procedural default where:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013) (citing Martinez v. Ryan, 566 U.S. 1 (2012)). This exception does not apply to the instant case, either.

16

examination." Lodg. Doc. 7 at 9. The Ninth Circuit has held that California's contemporaneous objection rule is an independent and adequate state procedural rule. See Tong Xiong v. Felker, 681 F.3d 1067, 1075 (9th Cir. 2012). Petitioner has demonstrated neither cause for the default nor that failure to consider this claim on its merits will result in a fundamental miscarriage of justice.

Second, this claim should be rejected on its merits. Petitioner's counsel had an opportunity to cross-examine Bennett at the preliminary hearing. 1 CT at 35-53. Petitioner states that he did not have an opportunity for *effective* cross-examination because, at the time of the preliminary hearing, the defense "did not have case discovery." ECF No. 1 at 4. Petitioner does not specify what case discovery was missing. Nor does he explain, in any specific terms, how the absence of this discovery rendered cross-examination ineffective. As noted above, the Confrontation Clause demands only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original). And petitioner bears "the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." Davis v. Woodford, 333 F.3d 982, 991 (9th Cir. 2003). Petitioner has not carried that burden here.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file

1 | objections within the specified time may waive the right to appeal the District Court's order.
2 | Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 | DATED: September 14, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE